IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JACQUELINE COFFEY,<br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, COMMISSIONER<br>OF SOCIAL SECURITY<br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 4:19-CV-00390-Y |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate are as follows:

## FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Jacqueline Coffey ("Coffey") filed this action pursuant to Section 205(g) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). On September 26, 2016, Coffey applied for DIB alleging that her disability began on August 25, 2016. (Transcript ("Tr.") 10, 164-73.) Coffey's application was denied initially and on reconsideration. (Tr. 10, 51-89, 92-95.) Coffey then requested a hearing before an administrative law judge ("ALJ"). (Tr. 10, 96-97.) On April 11,

2018, a hearing was held before the ALJ, and on June 28, 2018, the ALJ found that Coffey was not disabled within the meaning of the SSA. (Tr. 10-50.) Coffey filed a written request for review of the ALJ's decision to the Appeals Council. (Tr. 158-60.) On April 4, 2019, the Appeals Council denied Coffey's request, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-6.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b). "Substantial gainful activity" is defined as work activity involving the use of significant physical or mental abilities for pay or profit. *See id.* § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).[1] Fourth, if disability cannot be found based on the claimant's

---

[1]Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant is able to do notwithstanding her physical and mental limitations. 20 C.F.R. §§ 404.1520(a)(4), (e). The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis. *Id.* § 404.1520(a)(4). At step four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* § 404.1520(a)(4)(iv). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* § 404.1520(a)(4)(v).

medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experiences. *Id.* §§ 404.1520(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to then show that she cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollis v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will

carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

In her brief, Coffey presents the following issue: Whether the ALJ properly analyzed and weighed all of the medical opinions within the administrative record. (Plaintiff's Brief on Appeal ("Pl.'s Br.") at 1.) Specifically, Coffey asserts that the ALJ substituted her own judgment for that of Coffey's treating physicians in her RFC finding, and did not properly weigh or give controlling weight to the opinions of: (1) Luke Heitz, M.D. ("Dr. Heitz"), Coffey's former primary care physician; (2) Sachin S. Kapur, M.D. ("Dr. Kapur"), Coffey's primary neurologist; (3) Madhuri Yemul, M.D. ("Dr. Yemul"), Coffey's primary care physician; and (4) Eric Ericson, M.D. ("Dr. Ericson"), Coffey's second neurologist. (Pl.'s Br. at 10.)

### IV. ALJ DECISION

In her June 28, 2018 decision, the ALJ concluded that Coffey was not disabled within the meaning of the SSA. (Tr. 10-18.) In making her determination, the ALJ followed the five-step evaluation process set forth above. (Tr. 12-18.) At step one, the ALJ found that Coffey had not engaged in substantial gainful activity since her alleged onset date of August 25, 2016. (Tr. 12.) At step two, the ALJ found that Coffey had the following severe impairments: (1) status post right frontal intracranial hemorrhage (stroke) and (2) hypertension. (Tr. 12.) At step three, the ALJ determined that Coffey's severe impairments did not meet or medically equal an impairment severity found in the Listing. (Tr. 14.) Next, the ALJ found Coffey had the RFC to "perform light work as defined in 20 CFR [§] 404.1567(b) except: no working around unprotected heights, open flames, or dangerous moving machinery; no climbing ladders, ropes, or scaffolds; and only frequent climbing ramps and stairs and balancing." (Tr. 14 (emphasis omitted); *see* Tr. 14-17.)

At step four, the ALJ found that Coffey was capable of performing her past relevant work as a Reception Clerk and Housekeeping Cleaner. (Tr. 18.) Accordingly, the ALJ found that Coffey was not disabled as defined in the SSA from August 25, 2016 through June 28, 2018, the date of the ALJ's decision. *Id.*

## V. DISCUSSION

In her brief, Coffey claims that the ALJ failed to properly weigh the medical opinions of: (1) Dr. Heitz; (2) Dr. Kapur; (3) Dr. Yemul; and (4) Dr. Ericson. (Pl.'s Br. at 6-7.) Coffey argues that the ALJ erred by: (1) substituting the ALJ's judgment, in the RFC finding, for that of medical opinions in the administrative record without citing other evidence or authority; and (2) failing to provide a proper full six-factor analysis under 20 C.F.R. § 404.1527. (Pl.'s Br. at 7, 10.)

### A. **RFC Determination**

Coffey argues that the ALJ substituted her own judgment in the RFC finding for that of medical opinions provided in the record without citing other evidence or authority. *Id.* An individual's RFC describes what an individual can do despite her limitations. SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2.

RFC is not the least an individual can do but the most. *Id.* The RFC is a function by function assessment, with both exertional and non-exertional factors considered, and is based on all of the relevant evidence from the record. *Id.* at *3-6. The ALJ determines a claimant's RFC. *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). The ALJ must discuss the

claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. §§ 404.1529; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p, 1996 WL 374184, at *5. The ALJ is not required to incorporate limitations in the RFC that she did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as fact finder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is more supported by the record.").

In this case, in making the RFC determination, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR [§] 404.1567(b) except: no working around unprotected heights, open flames, or dangerous moving machinery; no climbing ladders, ropes, or scaffolds; and only [in]frequent climbing ramps and stairs and balancing.

(Tr. 14 (emphasis omitted).) The ALJ referenced and analyzed, *inter alia*, the following medical evidence to make her determination: (1) Coffey's hospital records (*see, e.g.*, Tr. 285, 287, 295, 298, 300-01, 474-526); (2) Dr. Yemul's treatment notes and opinion (Tr. 255-57, 528-42, 548-62); (3) a psychological consultative examination performed by Jennifer Hambaugh, Psy.D. (Tr. 406-211); (4) an internal medicine consultative examination performed by Efesomwan Aisien, M.D. (Tr. 412-20); (5) Dr. Kapur's treatment notes and opinion (Tr. 300-05, 395-97, 421-32, 437-38, 466-69, 581-82); (6) Dr. Ericson's treatment notes (Tr. 402-04, 433-36.); and (6) state-agency

medical consultants opinions stating Coffey could perform medium work (Tr. 51-60, 62-78).[2] (Tr. 10-18.) The ALJ specifically found that:

> In sum, objective evidence from diagnostic testing and from physical and mental examinations has found no significant abnormalities since the claimant's discharge from the hospital in August 2016. Nonetheless, based on the claimant's fairly consistent complaints, including her testimony at the hearing, of occasional dizziness and headaches, the undersigned finds her limited as described above. This limitation to less than the full range of light work exceeds the assessments of the state agency doctors and gives the claimant the benefit of all reasonable doubt.
>
> As for the opinion evidence, the state agency medical consultants opined that the claimant could perform medium work, with frequent climbing ramps and stairs, occasional climbing ladders, ropes, and scaffolds, occasional balancing, and no concentrated exposure to workplace hazards (Ex. 1A, 3A). This opinion is given limited weight. It is generally consistent with the objective evidence in the record, but the claimant's consistent allegations and testimony at the hearing have been further considered in finding her limited to light work.

(Tr. 16.) While the ALJ gave most of the opinions of the physicians "little weight," it is clear that the ALJ's RFC determination was made after analyzing all of the medical evidence in the record. Based on the foregoing, the Court finds that the ALJ properly discussed the evidence in the record in making her RFC determination. The Court further finds that such evidence provides substantial evidence in the record to support the ALJ's RFC determination.

### B. **Medical Opinion Analysis**

An ALJ must consider all medical opinions but retains the ultimate determination of disability status. 20 C.F.R. §§ 404.1527(b), (d)(1). Controlling weight is assigned to the opinions of a treating physician if it is well supported by both medically acceptable clinical and laboratory diagnostic techniques, and consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Martinez v. Charter*, 64 F.3d 172, 176 (5th Cir. 1995). An ALJ may decrease

---

[2] The Court notes that the ALJ gave Dr. Heitz's opinion no weight. (Tr. 17.) The ALJ is not required to incorporate limitations in the RFC that she did not find supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).

7

the weight assigned to a treating physician's opinion for good cause, and disregard statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Conclusory statements to the effect that the claimant is "disabled" or "unable to work" are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. § 404.1527(d)(1); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if an ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § [404.1527(c)]." 209 F.3d 448, 453 (5th Cir. 2000). To reject a treating physician's opinion without controverting medical evidence, an ALJ must apply a six-factor analysis that considers: (1) the examining relationship; (2) the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c); SSR 96-6p, 1996 WL 364180, at *3; SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).[3]

---

[3] The Court notes that several of the regulations and applicable SSRs governing social security cases were amended or rescinded in 2017. *See, e.g.*, 82 Fed. Reg. 5844-01, 2017 WL 168819 (F.R. Jan. 18, 2017); 81 Fed. Reg. 66138-01, 2016 WL 5341732 (F.R. Sept. 26, 2016). These new rules generally apply to claims filed on or after January 17, 2017 or March 27, 2017, depending on the regulation, and so are not applicable to this case. *Id.* Thus, any new cites (unless otherwise noted) will be to the old rules that are applicable to claims filed prior to March 27, 2017.

### 1. Dr. Heitz, Coffey's Former Primary Care Physician

In her brief, Coffey argues that the ALJ erred by giving Dr. Heitz's medical opinions no weight without properly analyzing his opinions under the six factors set forth in 20 C.F.R. § 404.1527(c). (Pl.'s Br. at 7, 13.) As to Dr. Heitz's opinion, the ALJ stated:

> The record also contains a medical source statement from Luke Heitz, MD, but this opinion is given no weight, as there are no treatment or examination records in the file from Dr. Heitz that could support his opinion. Moreover, the record overall does not support the limitations on exertional, postural, and mental activities described in this opinion.

(Tr. 17; see Tr. 386-94.) While the only evidence in the record regarding Dr. Heitz's opinion is the October 2016 Medical Source Statement ("Statement") referenced by the ALJ, such Statement provides evidence that the ALJ properly considered the six factors set forth in 20 C.F.R. § 404.1527(c) prior to rejecting Dr. Heitz's opinion. To begin with, as to factors one and two, where the ALJ is to evaluate the examining and treatment relationship between Coffey and Dr. Heitz, the Statement relied upon by the ALJ indicates that Dr. Heitz treated Coffey three times in a six-week span on September 14, 2016, October 20, 2016, and October 27, 2016. (Tr. 387.)

As to factors three, four, and six, in which the ALJ evaluates the supportability and consistency of the physician's opinion as well as any other supportive or contradictory factors, the ALJ noted that there were no treatment or examination records on file that supported Dr. Heitz's opinion in the medical source statement. In fact, a review of such Statement shows Dr. Heitz stated that Coffey's symptoms would interfere with her attention and concentration frequently and that she would likely miss more than four days of work per month, and then he, contradictorily, indicated that Coffey's prognosis was good and she could tolerate moderate work stress. (Tr. 387-88.) As to factor five, more weight is generally given "to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."

9

20 C.F.R. § 404.1527(c)(5). However, Coffey in her brief, does not assert that Dr. Heitz is a specialist and, as such, this factor is not relevant.

While the ALJ's decision did not explicitly reference the six factors set forth in 20 C.F.R. § 404.1529(c), the ALJ's consideration of and citation to Dr. Heitz's opinion indicates he implicitly considered such factors. (Tr. 14-7.) Consequently, the ALJ did not err in evaluating Dr. Heitz's opinion, and remand is not required.

### 2. Dr. Kapur, Coffey's Primary Neurologist

Coffey also argues that the ALJ erred by giving Dr. Kapur's medical opinions limited weight without analyzing the factors set forth in 20. C.F.R. § 404.1527(c). (Pl.'s Br. at 13.) As to Dr. Kapur's opinion, the ALJ stated:

> The claimant complained to her neurologist of some dizziness "on and off," some blurry vision, intermittent right eye pain, and some forgetfulness (Ex. 9F). However, on examination, the claimant remained within normal limits as of March 2017 (Ex 9F/9). A second neurologist [Dr. Erickson] noted that she had "recovered remarkably well" by March, and recommended only regular exercise to address some musculoskeletal and mood complaints the claimant raised (Ex. 9F/15). . . .
>
> . . . .
>
> At a visit with her neurologist in November 2017, she reported her alleged seizure in May, but has been "doing well since" and had no dizziness, daytime sleepiness, numbness, or weakness (Ex[.] 14F/2). An examination was again unremarkable and the claimant was released to drive at the end of the month (Ex. 14F/2-3).
>
> Dr. Sachin Kapur, the claimant's neurologist, opined in November 2016 that the claimant had no impairment that lasted or could be expected to last twelve months and had no limitation in attention or concentration, but was still limited to low stress, sedentary work, and would miss at least four days of work per month (Ex. 5F). This opinion is also given limited weight as the limitations are not supported in the record. Moreover, even if the claimant were limited to sedentary work, she could perform her past relevant work, given that there is no documentation of any impairment that would limit her ability to do semiskilled (SVP 4) jobs. A second medical source statement from Dr. Kapur in March 2017 indicated the claimant could now only work part-time, would need to change position at will, would suffer occasional interference with attention and

concentration, and would still miss four or more days of work a month (Ex. 10F). This opinion is also given limited weight as it is clearly based primarily on the claimant's subjective allegations. There is no documented worsening in the medical record to explain the change in Dr. Kapur's medical opinion; instead, contemporaneous records indicate the claimant had "recovered remarkably well" by March 2017 (Ex. 9F/15). Indeed, examinations through January 2018 are essentially unremarkable.

(Tr. 16-17.)

As to Dr. Kapur, the evidence in the record and referenced by the ALJ include the following: (1) Dr. Kapur's treatment notes; (2) a November 2016 Medical Source Statement; and (3) a March 2017 Medical Source Statement. (*See* Tr. 16-17, 300-05, 395-97, 421-32, 437-38, 466-69, 581-82) As to factors one and two, under which the ALJ evaluates the examining and treatment relationship between Coffey and Dr. Kapur, the ALJ noted that Dr. Kapur was Coffey's treating neurologist since 2016 and referenced various exhibits in the record indicating that Dr. Kapur examined Coffey on several occasions. (Tr. 17.)

As to factors three, four, and six, under which the ALJ evaluates the supportability and consistency of the physician's opinion as well as any other factors that "tend to support or contradict the opinion,"[4] the ALJ explained that she gave Dr. Kapur's opinions limited weight because it was not supported in the record. *Id.* Specifically, the ALJ stated that Dr. Kapur's opinion was based primarily on Coffey's subjective allegations and that there was no documented worsening in the medical record to explain the change in Dr. Kapur's medical opinion; instead, contemporaneous records from Dr. Ericson indicated Coffey had recovered remarkably well. *Id.*

As to factor five, more weight is generally given "to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). In her brief, Coffey states that Dr. Kapur is her treating

---

[4]*See* 20 C.F.R. § 404.1527(c)(3).

11

neurologist. The ALJ was clearly aware that Dr. Kapur was a specialist in neurology as the ALJ specifically referred to Dr. Kapur as a neurologist in referencing the doctor's treatment records. (Tr. 16; *see, e.g.*, Tr. 300-05, 395-97, 421-32, 437-38, 466-69, 581-82.) Because the ALJ properly considered the six factors and set forth the specific reasons for giving Dr. Kapur's opinion "little weight," the ALJ did not err, and remand is not required.

### 3.     Dr. Yemul, Coffey's Primary Care Physician

As to Dr. Yemul's medical opinions, Coffey again argues that the ALJ erred because she did not analyze the factors under 20 C.F.R. § 404.1527(c) before assigning Dr. Yemul's opinions very little weight. (Pl.'s Br. at 13.) As to Dr. Yemul's opinion, the ALJ stated:

> In a May 2017 medical source statement the claimant's primary care physician, Madhuri Yemul, MD, opined that the claimant was limited by drowsiness and headaches such that she could stand and walk for less than two hours and sit for less than two hours in a workday, she would need to change position at will, she could occasionally lift ten pounds and rarely lift twenty, and she could rarely stoop, occasionally assume other postures, and never climb ladders (Ex. 8E/7). He further opined that the claimant had occasional limitations in attention and concentration and would miss more than four days per month due to her impairments. This opinion is given very little weight as it appears to be based solely on the claimant's complaints of symptoms and it is not supported by the medical evidence in the record, including Dr. Yemul's own treatment notes (Ex. 13F).

(Tr. 16-17; *see* Tr. 255-57, 528-42, 548-62.) Contrary to Coffey's arguments, the Court concludes that the ALJ properly considered the six factors set forth in 20 C.F.R. § 404.1529(c) prior to giving Dr. Yemul's opinions limited weight. To begin with, as to factors one and two, under which the ALJ evaluates the examining and treatment relationship between Coffey and Dr. Yemul, the ALJ stated that Dr. Yemul was Coffey's primary care physician and referenced various exhibits in the record indicating that Dr. Yemul examined Coffey on several occasions. (Tr. 16-17.)

As to factors three, four, and six, again under which the ALJ evaluates the supportability and consistency of the physician's opinion as well as any other supportive or contradictory factors,

12

the ALJ explained that she was giving very little weight to Dr. Yemul's opinion because it appeared to be based "solely on the claimant's complaints of symptoms and it is not supported by the medical evidence in the record, including Dr. Yemul's own treatment notes." (*Id.*) A review of Dr. Yemul's treatment notes indicates relatively normal examinations with continued treatment for mainly hypertension, seizures (as per neurologist), clinically stable subarachnoid hemorrhage, chronic pelvic pain, and intraductal carcinoma in situ of breast which Coffey had been noncompliant in following up on with a surgeon. (Tr. 528-42, 548-62.) As to factor five, where more weight is generally given "to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist,"[5] Coffey does not assert in her brief that Dr. Yemul is a specialist and, as such, this factor is not relevant.

Although the ALJ's decision does not specifically reference the six factors set forth in 20 C.F.R. § 404.1529(c), the Court finds that the ALJ properly considered Dr. Yemul's opinions and set forth specific reasons for giving Dr. Yemul's opinion limited weight. Consequently, the ALJ did not err in evaluating Dr. Yemul's opinion, and remand is not required.

### 4. Dr. Ericson, Coffey's Second Neurologist

Finally, as to Dr. Ericson's opinions, Coffey once again argues that the ALJ erred by giving Dr. Ericson's medical opinions very little weight without analyzing the factors set forth in 20 C.F.R. § 404.1527(c). (Pl.'s Br. at 13.) As to Dr. Ericson's opinion, the ALJ stated:

> A second neurologist [Dr. Ericson] noted that she had "recovered remarkably well" [from seizure-like episode and subsequent discovery of what turned out to be a left frontal intraparenchymal hemorrhage] by March [2017], and recommended only regular exercise to address some musculoskeletal and mood complaints the claimant raised (Ex. 9F/15). His [Dr. Ericson's] mental status examination found that the claimant knew the month and [year], but not the date; could discuss current events, but with paucity of detail; recalled only one of three words after five minutes, but could recall another with a hint; and she had no issues with attention or calculation (Ex. 9F/14).

---

[5] 20 C.F.R. § 404.1527(c)(5).

> . . . .
>
> . . . . There is no documented worsening in the medical records to explain the change in Dr. Kapur's medical opinion; instead, contemporaneous records [from Dr. Ericson] indicate the claimant has "recovered remarkably well" by March 2017 (Ex. 9F/15). Indeed, examinations through January 2018 are essentially unremarkable.
>
> Dr. Eric Erickson [sic], a neurologist who saw the claimant at a single visit in October 2016, opined [in November 2016] that the claimant could stand or walk for less than two hours in a workday with additional postural limitations, she could lift ten pounds frequently and twenty pounds rarely, and she was incapable of even low stress jobs due to head pain (EX. 5F/13-15). This opinion is given very little weight, as Dr. Ericson had seen the claimant at a single office visit, at which time she had a normal examination (Ex. 5F/13). He saw the claimant again in March 2017, noted she had recovered well, and recommended she exercise regularly (Ex. 9F/15).

(Tr. 16-17.) The evidence in the record and as referenced by the ALJ regarding Dr. Ericson's opinions include a November 2016 Medical Source Statement and March 2017 treatment notes. (Tr. 16-17; *see* Tr. 402-04, 433-36.) Contrary to Coffey's arguments, this evidence shows the ALJ properly considered the six factors set forth in 20 C.F.R. § 404.1529(c) prior to giving Dr. Ericson's opinions limited weight. Once more, as to factors one and two, under which the ALJ evaluates the examining and treatment relationship between Coffey and Dr. Ericson, the ALJ noted in the November 2016 Medical Source Statement that Dr. Ericson was "a neurologist who saw the claimant at a single visit in October 2016." (Tr. 17.) In addition, the ALJ noted that Dr. Ericson again saw Coffey in March 2017. (Tr. 16-17.)

And again, as to factors three, four, and six under which the ALJ evaluates the supportability and consistency of the physician's opinion as well as any other supportive or contradictory factors, the ALJ explained that she was giving Dr. Ericson's opinion very little weight because his opinion in the November 2016 Medical Source Statement came after "a single office visit, at which time [Coffey] had a normal examination." *Id.* Further, the ALJ stated that

Dr. Ericson saw the claimant again in March 2017, noted she had recovered well, and recommended she exercise regularly. *Id.* As to factor five, more weight is generally given "to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). The ALJ, in his discussion of Dr. Ericson's opinions, noted on two occasions that Dr. Erickson was a neurologist. (Tr. 16-17.) Because the ALJ analyzed the factors set forth in 20 C.F.R. § 404.1527(c) and provided reasons for giving Dr. Ericson's limited weight, the Court finds that the ALJ did not err. Consequently, remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **July 8, 2020** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED June 24, 2020.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv